IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| v. | § | 2:12-CR-595-2 |
| | § | |
| CARLOS LUNA, | § | |
| Defendant/Movant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the government's motion to return Carlos Luna to the custody of the Attorney General for restoration of competency and a defense motion for risk assessment and subsequent hearing. D.E. 107, 108. For the reasons stated below, the Court grants in part and denies in part both motions.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Carlos Luna was charged with multiple counts of possession of a firearm by a felon, including aiding and abetting his co-defendant Joshua Wallace. D.E. 1. He was arrested in August 2012. D.E. 10. After a detention hearing, Luna was held pending trial. D.E. 26.

Luna, through counsel filed a notice that he intended to enter a guilty plea. D.E. 29. At the scheduled hearing, Luna stated his name was Carl Moon and he wanted a different non-Hispanic attorney. D.E. 31. The Court appointed new counsel due to the conflict between Luna and his counsel. Id. The case was reset. Id.

New counsel filed an unopposed motion for a competency evaluation. D.E. 34. After a hearing, the Court granted the motion and Luna was committed to the custody of the

1

Attorney General. D.E. 35. After evaluation, the Bureau of Prisons informed the Court that in the opinion of the BOP Forensic Staff in Fort Worth, Luna did not appear to be competent to stand trial. D.E. 47.[1] The BOP recommended transfer to a treatment facility to restore Luna's competence to stand trial. Id. The Court ordered Luna be remanded to the BOP to be transferred to a medical facility for no more than 120 days for competency restoration. D.E. 48.

In June 2013, the BOP advised the Court that Luna remained incompetent to stand trial. Luna had refused medication that his doctors believed would help restore his competency. The BOP requested judicial permission for involuntary administration of psychotropic medications. D.E. 83. The Court held a status conference in early July 2013, D.E. 85, after which the Court authorized the medical staff to administer psychotropic medication to Luna, involuntarily if necessary. D.E. 88.

In December 2013, the Court and counsel were provided with an update on Luna's mental status. In a report dated December 2, 2013, Luna's evaluators agreed that he was at that time competent to stand trial. D.E. 89. The report attached a Certificate of Restoration of Competency to Stand Trial. Id., p. 4. The evaluators were Carlton Pyant, Ph.D. and Robert Lucking, M.D. Id., p. 12.

---

[1] Luna was evaluated by Dr. Randall Rattan, Ph.D., a psychologist who diagnosed Luna with Delusional Disorder, Grandiose and Persecutory Types. Dr. Rattan's prognosis for Luna was guarded. He recommended transfer to a medical facility for restoration of competency. Id. a, p. 8. Luna's history included a stay at North Texas State Hospital for restoration of competency from November 2005 through January 2006 in connection with a Texas assault. Luna was discharged from that facility with a diagnosis of Delusional Disorder, Mixed Type, with Persecutory and Grandiose Themes. Id., p. 3.

The Court issued a Writ of Habeas Corpus Ad Prosequendum for Luna's appearance for pretrial conference in Corpus Christi, Texas on January 6, 2014. D.E. 91. Luna was returned to Texas. A status conference was held on December 19, 2013.

On January 2, 2014, counsel for Luna again raised concerns about Luna's competency. The parties appeared for pretrial conference on January 6, 2014. Luna stated that he wished to plead guilty and the Court began his rearraignment. Minute Entry Jan. 6, 2014. When Luna learned that he could be sentenced to up to 10 years in federal prison, he declined to proceed with the plea. Id.

A few days later, the government filed a motion for a mental health examination to determine insanity at the time of the offense. D.E. 98. A competency hearing was held January 16, 2014, with testimony from Luna's evaluators, Dr. Lucking, a psychiatrist, and Dr. Pyant, a psychologist, presented testimony and observed the proceedings by video conference. During that hearing, Dr. Pyant testified that Luna's competence had been restored. According to Dr. Pyant, at the time he left Butner, North Carolina, Luna's speech was fluid, responsive and articulate, with no indication of delusional thoughts. January 16, 2014, ERO at 2:59:16/59:45.

During the hearing, the Court recessed for approximately 30 minutes to provide Dr. Pyant an opportunity to interview Luna and to hear Luna's response to his attorney. After the conclusion of Dr. Pyant's interview and observations of Luna, Dr. Pyant believed, as did Luna's attorney, that Luna had decompensated and was no longer competent to stand trial. Id. at 3:33:14/34:08. Dr. Pyant believed that Luna's delusional thought processes would

interfere with his ability to assist counsel with his defense. Id. At the conclusion of the hearing, the Court orally found Luna to be incompetent to stand trial. Minute Entry, January 16, 2014.

The Court called a hearing the following day, withdrew the Court's finding of incompetency, and requested the parties provide additional evidence regarding Luna's medication and information from the Karnes facility where Luna is being held to help establish Luna's status. Minute Entry, January 17, 2014. A hearing was scheduled for January 27, 2014. D.E. 102.

On January 27, 2014, the Court heard the testimony of Dr. Patricia Caballero, M.D., a psychiatrist employed by GEO Corporation who assesses prisoners by video conference at several facilities operated by GEO, a correctional facilities company. January 17, 2014, ERO at 9:25:47/9:29:57. Dr. Caballero saw Luna twice. Dr. Caballero's first visit with Luna was on December 18, 2013, the day after he arrived in Texas from Butner, North Carolina. She spent 15-30 minutes with him. Id. at 9:30:59/38:09. Also present for the interview was Evelyn Salais, LVN, who works with Dr. Caballero at the Karnes facility. Nurse Salais was in the room with Luna when the interview took place. Id. at 9:41:25.

According to Dr. Caballero, she did not receive records from Butner when Luna was transferred to the Karnes facility, other than the Court's Order requiring Luna to be maintained on his current medication. Id. at 9:33:13. During his first visit, Dr. Caballero found Luna to be alert, articulate, oriented and she found no evidence of delusions or hallucinations. Id. at 9:38:09. Before her interviews with prisoners, Dr. Caballero requests

input from Nurse Salais who collects information from staff at the prison who interact with the prisoner.

Dr. Caballero noted no difference in Luna's demeanor or appearance when she spoke with him the second time. Id. at 9:39:09/28. She believes he is still competent to stand trial. According to the medical records Dr. Caballero reviewed, Karnes continued Luna's medication of 50 milligrams of Risperdol intramuscularly every two weeks and Cogentin twice a day. Id. at 9:40:09/40:30; 9:58:33. Luna rejected his most recent dose of Risperdol on January 23, January 24, and January 25, 2014. Id. at 9:59:24/10:08:13.

Luna is housed in a segregation cell, but not for medical reasons. Id. at 9:47:00/48:01. None of the witnesses could explain why Luna is housed in segregation. He is permitted out of his cell for a daily shower and for an hour of recreation daily. Id. Officers are present in the unit all the time. Id. at 9:47:00. Karnes has a licensed professional counselor on staff. Dr. Caballero believes that Luna has refused counseling. Luna was supposed to see her two to four weeks after his December 31, 2013, visit. As of January 27, Dr. Caballero had not seen him again, but a visit may be scheduled of which she was as yet unaware. Id. at 9:53:21.

Evelyn Salais, LVN, supervises 8 nurses and medical staff. She reviews the records for psychiatric patients, including Luna. Id. at 9:55:22/58:05. She occasionally gives him medication. He refused doses of Cogentin on January 11, 13, 14, 17, and 26. Id. at 9:58:58/10:03:13. Salais also makes psychiatric rounds in Luna's unit once a week, but has not spoken to Luna other than about his medication. Id. at 10:03:13/04:36. Nurse Salais does not know whether Luna takes his daily shower, nor does she know whether he goes to his

5

recreation period. Id. at 10:09:55. There are 10 or 12 cells in Luna's unit. Id. at 10:09:27. The front wall of each cell consists of bars that allow visibility into and out of the cell. Id. at 10:07:40. The side walls are solid. Id.

Carlton Pyant, Ph.D. listened to the testimony of Dr. Caballero and Nurse Salais by video conference. Id. at 10:15:58. He observed Luna's lack of focus in his interactions with the Court, his disorganized thinking and impulsivity. Id. at 10:15:03/18:10, 10:27:28/27:40. While Luna was at Butner, Luna was placed in the least restrictive setting. He had a room mate and was allowed to move about his unit and talk with the medical professionals at will. Id. at 10:18:05/18:50. Dr. Pyant does not know why Luna has decompensated, but the conditions of housing may have an effect. Id. at 10:17/10/17:20. Additionally, it may just be that Luna's medication is due for an adjustment. Id. at 10:31:26. The hearing on January 27, 2014, did not change his opinion that Luna is no longer competent to stand trial. Id. at 10:26:38/10:29:16. He believes that Luna may be restored to competence at Butner again and that Butner could hold Luna until the Court was ready to try Luna. Id. at 10:15:18, 10:21:23/21:52. Pyant's continued belief in Luna's lack of competency was based in large part on Luna's disorganized thinking, including his dialogue about Clear Channel communications. Dr. Pyant believed that Luna's prominent delusions will likely interfere with Luna's communications with counsel. Id. at 10:27:28/28:22. As an example, Luna stated that he did not wish to testify at his upcoming trial. One of Luna's statements that caused concern was Luna's reason for not testifying. Luna did not want the public to know secret

and important information that Luna knew, and the public exposure of that information could cause danger to the public. ERO Jan. 27, 2014 at 10:28:23/10:29:16.

Near the conclusion of the hearing, Luna wished to make a statement. He spoke virtually uninterrupted for nearly 15 minutes. ERO January 27, 2014, 10:40:05/10:54:26. During that time, only a very small portion of his remarks had anything to do with the charges he was facing or their potential consequences. In fact, he insisted he wanted to plead guilty and do his time of one or two more years. He remembered backing out of an earlier guilty plea during rearraignment, but he did not recall the potential punishment he could receive. Luna appeared to be unaware of the seriousness of the multiple firearms charges against him.[2] Instead, Luna was more concerned about getting out of jail so he could work to pay off thousands of dollars in traffic fines. Id. at 11:07:44/11:08:04.

## II. ANALYSIS

Carlos Luna has said more than once that he should be allowed to plead guilty and accept responsibility for his actions and end the numerous court proceedings. His counsel argues that he is not competent to plead guilty and the government concurs. The psychologist who treated him at Butner for more than four months had the opinion that Luna is not competent to stand trial. ERO January 16, 2014 at 3:35; January 27, 2014 at 10:20:46.

---

[2] On January 6, 2014, Luna attempted to plead guilty. Minute Entry Jan. 6, 2014. After being informed of the rights he was giving up, the procedure and the punishment range of up to 10 years, fees, fines, and supervised release, Luna decided he would rather have a trial. ERO January 6, 2014, at 10:39:20.

7

Although Luna is aware that he is charged with a crime involving a firearm, and he seems to understand the role of a judge, a jury, his attorney and the prosecutor, he does not have a rational understanding of the consequences of his guilty plea. During the January 27, hearing, Luna was unable to focus on the nature of his offense and its consequences, or the capacity to assist his attorney. According to Dr. Pyant, Luna's disorganized and delusional thinking would prevent Luna from being able to listen to and accept counsel from his attorney.

No one has performed a risk assessment on Luna at this time. ERO, January 16, 2014, at 3:37:25. According to Dr. Pyant, the options available are to attempt to restore competency and/or to perform a risk assessment. Id. at 3:35. Dr. Pyant continues to believe that Luna's competency can be restored again. ERO, January 27, 2014, at 10:15:18.

The Court requested the parties provide recommendations and brief the issues which resulted in the present motions. The government seeks commitment of Luna to the custody of the Attorney General to restore his competency. Luna's counsel focuses on the time Luna has already spent in custody and seeks a risk assessment to be performed locally and then a hearing pursuant to § 4247(d).

A criminal defendant is competent to stand trial when he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." Godinez v. Moran, 509 U.S. 389, 396 (1993) (internal quotations omitted); see also United States v. McKnight,

570 F.3d 641, 648 (5th Cir. 2009). The same standard applies when a defendant seeks to plead guilty or waive his right to counsel. Godinez, 509 U.S. at 396.

Section 4241 provides that if a criminal defendant is suffering from a mental disease or defect to the extent that he is unable to assist in his defense, "the court shall commit the defendant to the custody of the Attorney General. 18 U.S.C. § 4241(d). The Attorney General shall hospitalize the defendant in a suitable facility" for a reasonable time to determine whether there is a substantial probability that the defendant will attain the capacity to permit the proceedings to go forward, and "for an additional reasonable period of time" until his mental condition is so improved that trial may proceed, or the pending charges against him are disposed of according to law. Id.

Section 4246 provides that when a person who has been committed to the custody of the Attorney General pursuant to § 4241(d) and who is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another or serious property damage to property of another, the Court shall order a hearing for a risk assessment. 18 U.S.C. § 4246(a), (d). The Court shall order a psychiatric or psychological examination before the hearing. 18 U.S.C. § 4246(c). After a hearing, if the Court finds by clear and convincing evidence that the release of the person would create a substantial risk of bodily injury to another person or serious damage to property of another, the Court shall "commit the person to the custody of the Attorney General." Id. at § (d).

The Court again finds that Luna is not presently competent to assist in his defense and is accordingly, not competent to stand trial. The Court finds that it may be possible for Luna

to regain competence to stand trial, but that finding is guarded. The Court further finds that if Luna has not regained competence in the near future that a risk assessment is necessary to determine the further disposition of the charges against Luna and whether Luna should continue to be committed to the custody of the Attorney General. The Court prefers to return the Defendant to the health care of those most familiar with the history of Carlos Luna, but the Court is very concerned with his recent deterioration.

## CONCLUSION

The Court ORDERS that Carlos Luna be returned to the custody of the Attorney General for restoration of competency pursuant to 18 U.S.C.§ 4741(d), for a risk assessment pursuant to 18 U.S.C.§ 4747(b) and report pursuant to § 4747(c). The Court has previously authorized the treatment of Carlos Luna with psychotropic medication in an effort to restore his competency by Order of the Court dated July 18, 2013. D.E. 88. The Court's authorization for involuntary psychotropic medication of Carlos Luna remains in effect.

The Court further ORDERS that the Attorney General or his designee provide status reports on Carlos Luna's mental condition to the Court every thirty (30) days. The Court will order a risk assessment hearing no later than 100 days from the date of this Order if Carlos Luna has not been restored to competency before that date.

The motions (D.E. 107, 108) are GRANTED in part and DENIED in part.

It is so ORDERED this 10th day of February 2014.

*Hayden Head*
HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE